UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

                                    Case No. 11-20188

vs.

                                    HON. GEORGE CARAM STEEH

D-2 FRANK HARPER,
D-4 PHILLIP HARPER and
D-5 BERNARD EDMOND,

                Defendants.
_____/

ORDER DENYING DEFENDANTS' MOTIONS FOR DIRECTED
VERDICT, JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE
VERDICT, OR FOR NEW TRIAL [DOCS. 140, 173, 174, 175] AND
GRANTING GOVERNMENT'S MOTION TO STRIKE [DOC. 195]

      This matter is before the court on defendants' motions for new trial and judgment
of acquittal following a two-week trial in which the jury returned guilty verdicts on 31 of
33 charges against Phillip Harper, Frank Harper and Bernard Edmond.  Phillip Harper
and Edmond were found not guilty on Count 13, using and carrying a firearm during and
relation to a crime of violence, specifically the March 12, 2011 carjacking.

      Frank Harper makes nine separate arguments for judgment of acquittal or a new
trial, and Phillip Harper joins in the motion.  (Frank Harper's Motion for Directed Verdict,
Judgment in Favor of the Defendants Notwithstanding the Verdict or, in the Alternative,
for a New Trial [doc 140]; Frank Harper's Supplemental Memorandum [doc 174]; Phillip
Harper's Notice of Joinder and Concurrence [doc 178]).  Phillip Harper makes four
arguments in his motion, which is joined in by Bernard Edmond and Frank Harper.

-1-

(Phillip Harper's Motion for Directed Verdict, Judgment Notwithstanding the Verdict, or Alternatively, for New Trial [doc. 175]; Frank Harper's Notice of Joinder [doc 177]; Bernard Edmond's Joinder [doc 176]).  Bernard Edmond argues four bases in support of his motion for judgment of acquittal or new trial, which is joined in by Phillip and Frank Harper.  (Bernard Edmond's Supplemental Motion for a Judgment of Acquittal Notwithstanding the Verdict or in the Alternative, Motion for New Trial pursuant to Fed. R. Crim P. 29 and Fed. R. Crim P. 33 [doc 173]; Frank Harper's Notice of Joinder [doc 177]; Phillip Harper's Notice of Joinder and Concurrence [doc 178]).  Altogether, the parties have filed 258 pages of motions and briefs, and rely on roughly 2,000 pages of trial transcript.

The government filed a motion to strike the portions of defendants' reply briefs that raise new arguments not argued in their original motions.  "Arguments raised for the first time in a reply brief are waived."  *United States v. Owens*, 458 F. App'x 444, 446 (6th Cir. 2012).  The court agrees that any new argument raised for the first time in the reply briefs is waived, and will not be addressed further by the court.

The defendants were charged in an Amended Third Superseding Indictment with multiple counts of conspiracy, carjacking or causing carjacking, attempted carjacking, using or carrying a firearm during and in relation to a crime of violence, causing interstate transportation of stolen motor vehicles, falsification and removal of motor vehicle identification numbers, and operating a chop shop.  At the close of the government's case, counsel for defendants moved for directed verdict pursuant to Federal Rule of Criminal Procedure 29.  The court took the motions under advisement and permitted the filing of supplemental pleadings.  Defendants now raise numerous

issues in their motions brought pursuant to Rule 29 for judgment of acquittal, and Rule 33 seeking a new trial.

Rule 29 permits a court to set aside a guilty verdict and enter a judgment of acquittal if it finds that the evidence is insufficient to sustain a conviction. "All reasonable inferences must be drawn in favor of the jury's verdict." *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008). The court is not to weigh the evidence, consider credibility, or substitute its judgment for that of the jury. *United States v. Driver*, 535 F.3d 424, 428-29 (6th Cir. 2008). If "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" then the motion must be denied. *Jackson v. Virginia*, 443 U.S. 307, 319 (1978).

Under Rule 33, a judge may "grant a new trial if the interests of justice so requires." A defendant challenging the sufficiency of the evidence bears the burden of proving that a new trial should be granted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). "When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the court may weigh the evidence and assess the credibility of the witnesses." *United States v. Matthews*, 298 F. App'x 460, 465-66 (6th Cir. 2008).

A. Sufficiency of Evidence for Convictions Against Phillip Harper, Frank Harper, and Bernard Edmond

Each of the defendants argues that there was insufficient evidence from which the jury could convict them of the counts charged in the indictment. Defense counsel attempts to demonstrate the weaknesses in the government's case, pointing out which elements of each charged offense the government failed to prove beyond a reasonable doubt. In response, the government goes through each element of the crimes charged,

and the corresponding evidence and testimony from which the jury could conclude that the elements had been proven.

During the two-week trial in this case, the government presented substantial evidence and testimony to support each conviction under a direct, aiding and abetting, or Pinkerton theory as outlined in its response brief.

B.  Mention of the Word "Polygraph"

At trial, Agent Southard was asked by the government to confirm that he was not present during Phillip Harper's June 1, 2012 interview.  Southard responded, "Correct. The polygraphs –" Phillip Harper's attorney interrupted and asked for a sidebar.  The court asked defendants if they wanted a cautionary instruction and each declined.  After the parties researched the law, the court heard additional argument and denied a motion for mistrial based on the use of the word "polygraph."  The court held that Southard's truncated response was "so ambiguous" that the likelihood of an adverse inference to defendants was no more likely than a favorable inference.  The court further noted that the harmlessness "inquiry is impossible for the Court to make at this juncture with so little evidence having been introduced . . . [and the Court] would be in a better position to make that assessment after the evidence . . . but my determination as to what we've got now is that the motion for mistrial should be denied, and I will enter an order to that effect."

There is no indication that Agent Southard's reference to a polygraph was deliberate, and it was without substance.  The court previously noted that it did not believe a juror would have inferred from Southard's reference that defendant Phillip Harper had failed a polygraph exam.  Furthermore, the bulk of the evidence in the case

-4-

was overwhelming as to the defendants' guilt, making the polygraph reference harmless in contrast.  *United States v.* Little, 1993 WL 453396, at * 11-12 (6th Cir. 1993); United *States v. Murray*, 784 F.2d 188, 189 (6th Cir. 1986).

C.  <u>Juror Misconduct</u>

Defendants argue there was jury misconduct based on a post-trial meeting with jurors, when, in response to questions from defense counsel, a juror asked why their clients had not taken the stand.  Defendants maintain that this question is evidence that the juror had improperly considered the defendants' election not to testify in determining their guilt.

The fact that a juror asked defense counsel a question about his strategy, in an informal discussion that took place after the verdict and in the presence of the judge and counsel, merely shows a curiosity about the criminal justice system.  In this court's experience, the question is one quite often asked by jurors following a criminal trial, and is not an indication of juror misconduct.  Prior to deliberations, the court specifically instructed the jurors that:

> A defendant has an absolute right not to testify or present evidence.  The fact that he did not testify or present evidence cannot be considered in any way.  Do not even discuss it in your deliberations.

There is no basis to conclude that by asking *why* counsel did not put his client on the stand the juror considered this fact as evidence of guilt in finding the defendants guilty. The court denies defendants' motion for new trial on the basis of alleged juror misconduct.

D. Jury Instructions

Defendants argue that the jury instructions relating to the charges of using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) were inadequate.  The government responds that defendants failed to object to the challenged instructions at the time they were given, and therefore waived their right to later object.  However, the court summarized defendants' objections for the record, which had been voiced during the charging conference.  Defendants generally complained that the instructions did not fairly encompass the law that applies regarding *Pinkerton* liability for substantive offenses committed by others within the scope of the conspiracy.

Defendants maintain that the general aiding and abetting instruction is not sufficient to satisfy the requirement that the jury be instructed that defendant must have had advance knowledge of a firearm's presence.  *United States v. Rosemond*, 134 S.Ct. 1240 (2014).  The court instructed the jury that "the second element [of a § 924(c) offense] is that the defendant knowingly used or carried a firearm, or knowingly caused or aided someone to carry a firearm."  This instruction is based on the Sixth Circuit Pattern Criminal Jury Instructions § 12.02 (2013).  The instruction does not specifically require that the defendant have advance knowledge, but, as the government points out, a defendant could not knowingly cause or aid a carjacker to carry a firearm unless they knew in advance that the carjacker would be using or carrying a gun.

The aiding and abetting instruction provided that "[p]roof that the defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty . . . without more it is not enough.  What the Government must

prove is that the defendant did something to help or encourage the crime with the intent that the crime be committed." This instruction comes from the Sixth Circuit Pattern Criminal Jury Instructions § 4.01 (2013). Pursuant to this instruction, in order for the jury to find that defendants "helped or encouraged" the crime of using or carrying a gun for the carjackings, it must have found that defendants knew in advance that a gun was going to be used, by a defendant, or another, or both.

The jury was additionally given a *Pinkerton* instruction, which is proper where defendants are indicted for the substantive offenses committed by co-conspirators within the scope of the conspiracy. These are separate theories of liability: a defendant may be found liable for a substantive offense as an aider and abetter, or as a co-conspirator under *Pinkerton*. Aiding and abetting requires advance knowledge, while *Pinkerton's* standard is one of reasonable foreseeability. Following *Rosemond*, a decision that was issued after the conclusion of trial in this case, other circuits have held that "even if there had been error regarding aiding and abetting, it was harmless because ample evidence supported [the defendant's] liability under *Pinkerton*." *United States v. Young*, 2014 WL 1327940, at *6 (2nd Cir. 2014).

The evidence submitted at trial was that the carjackers were armed with loaded handguns, the alleged co-conspirators knew that Stratford Newton kept a loaded handgun for them in the minivans as they headed out to the carjackings, and that using the loaded handgun was the plan. There was certainly enough evidence to support a finding that defendants had advance knowledge that a gun would be used in the carjackings. Alternatively, the evidence supports a finding that it was reasonably foreseeable to defendant that a gun would be used.

-7-

This court finds no error in the jury instructions given as to § 924(c) liability or the aiding and abetting counts.

E.  Verdict Form

Defendant Frank Harper contends that the verdict form was defective as to the firearm offense under 18 U.S.C. § 924(c) because it was general and did not require the jury to indicate whether defendant had used a gun, or aided and abetted a confederate's use of a gun, during the carjackings.  Defendant raises this issue in his supplemental memorandum ([doc. 174] p. 1), but fails to develop any argument as to why a distinction must be made in the verdict form.  As such, the argument is deemed waived.  *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009).

F.  Bowman Post-trial Affidavit

Frank Harper submits the affidavit of government witness Justin Bowman, dated October 14, 2013, wherein he states that he has never "seen, heard of, or witnessed" Frank Harper "commit any type of crime using or possessing a firearm".  This post-trial exculpatory affidavit purports to recant Bowman's trial testimony regarding the robbery of Erroll Service, which is the basis of Counts Six and Seven.

Recanted testimony is viewed with great suspicion, and Frank Harper's record of tampering with other witnesses in this case supports this court's suspicion of Bowman's post-trial affidavit.  "[A] motion for a new trial based on the recantation of a material government witness should be granted only if: (1) the court is reasonably well satisfied that the trial testimony given by the material witness is false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given, and was unable

-8-

to meet it or did not know of its falsity until after the trial." *United States v. Alaniz*, 75 F.App'x 344, 350-51 (6th Cir. 2003) (citation omitted). Bowman's testimony was in large part corroborated by Newton's trial testimony, the victims' testimony, the phone records and video placing Frank Harper with the other co-conspirators, and Frank Harper's Twitter records showing his loaded handgun. The court is not satisfied that Bowman's testimony during trial was false, and concludes that there was sufficient evidence aside from Bowman's testimony to support the jury's verdict.

G. Constructive Amendment or Variance

A constructive amendment results "when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Nixon*, 694 F.3d 623, 637 (6th Cir. 2012) (citation omitted). A constructive amendment violates the Fifth Amendment's guarantee of a grand jury. *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006).

The conspiracy charged a violation of 18 U.S.C. § 371 and alleged that defendants committed several "offenses against the United States: carjacking[,] operating a chop shop[,] interstate transportation of stolen vehicles[,] and altering vehicle identification numbers[.]" (Third Superseding Indictment [doc. 109]). The indictment alleged that defendants committed 23 listed acts in furtherance of the conspiracy, including seven carjackings charged as an individual substantive crime, and several vehicle thefts, "along with other acts." *Id.* Frank Harper claims that "the evidence presented at trial only made out a conspiracy to steal automobiles . . . even

-9-

though Mr. Harper had not been charged with this offense." (Motion for Directed Verdict, p. 8 [doc. 140]). Phillip Harper joined in this argument as well.

The jury instructions stated that count one Conspiracy "accuses the defendants of a conspiracy to commit the crimes of carjacking, interstate transportation of stolen cars, altering the vehicle identification number of cars, and running a chop shop, all in violation of federal law." (Jury Instructions [doc. 139]).

The jury found defendants guilty of conspiracy to commit federal crimes in violation of 18 U.S.C. § 371. Neither the evidence, nor the jury instructions, modified the conspiracy charge to somehow make simple auto theft a federal crime. The court does not find there has been a constructive amendment in this case.

## H. *Brady* Violation

Frank Harper argues that the government provided discovery materials that were replete with errors, and it was only during trial that the defense was advised, by way of witness testimony, that the 302s were inaccurate, and included erroneous averments attributed to the cooperating witnesses. "[T]he *Brady* doctrine is not violated if *Brady* material is disclosed in time for its effective use at trial.' *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). Defense counsel maintains that he did not know about the inaccuracies while he was preparing for trial, or while he was attempting to impeach Stratford Newton.

"If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosures." *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Frank Harper argues that his defense was predicated on impeaching Newton's credibility, which in his estimation had

-10-

been seriously challenged until Agent Southard took the blame for the inaccuracies in the 302s. As Harper characterizes it, in one instant all of the preparation, planning and gains which had been made during cross examination of the government's star witness were wiped away. However, trials cannot be scripted, and strategies are regularly reevaluated and changed based on how the evidence comes in. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998). Frank Harper had all the information he complains about during trial, and had the opportunity to cross-examine or call each witness to question them about the accuracy of the reports.

The court finds no *Brady* violation in this case.

I. Double Jeopardy

The jury convicted Bernard Edmond of Count 22, which charged him with operating a chop shop from January 1, 2009 through December 31, 2011. On January 20, 2010, Edmond pled guilty to a State of Michigan charge that he had attempted to operate a chop shop on one day during the same three year period - December 4, 2009. Edmond argues that Count 22 placed him a second time in jeopardy for the Michigan offense for which he was convicted in 2010, in violation of the Fifth Amendment. Edmond raised this issue at trial when his counsel objected to testimony that related to the prior act Edmond pled to in State court which was not named in the overt acts at issue in the federal matter. (Doc 169, pg 169; doc 170, pg 126-27).

A claim that an indictment places a defendant twice in jeopardy for an offense must be raised before trial, and is forfeited if not timely raised. Fed. R. Crim. P. 12(b)(3)(A); *United States v. Branham*, 97 F.3d 835, 841-43 (6th Cir. 1996). Edmond did not raise his double jeopardy claim until the government had completed its proofs.

-11-

The Supreme Court has held that Double Jeopardy only bars successive prosecutions by the same sovereign. Therefore, the federal government may possibly prosecute a defendant for an offense even after a state has prosecuted the same defendant. Federal double jeopardy analysis traditionally is conducted through application of the same-element test originally articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). That test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Smith v. Mills*, 98 Fed. App'x 433, 436 (6th Cir. 2004) (citing *United States v. Dixon*, 509 U.S. 688, 696 (1993)).

In comparing the state offense of operating a chop shop in violation of MCL 750.535a(b) and the federal offense charged in this case under 18 U.S.C. § 2322, both require that the defendant control the premises where the chop shop is operated, and one or more persons are engaged in disguising the identity of a stolen motor vehicle or major component part of a stolen motor vehicle. There is one additional element in the federal offense not present in the state offense, that is "to distribute, sell, or dispose of such vehicle or vehicle part in interstate or foreign commerce."

Even if Edmond's double jeopardy challenge has not been forfeited, the additional element required for the federal offense of operating a chop shop means that this is not a successive prosecution barred by the Double Jeopardy Clause.

Edmond's second double jeopardy issue is that he cannot be sentenced both for carjacking in violation of 18 U.S.C. § 2119, and for violating 18 U.S.C. § 924(c) by causing a firearm to be used to commit the carjacking. However, Congress did intend

that the punishments for violation of section 924(c) and the underlying violent crime be cumulative when it said, "[a]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence . . . be sentenced [as follows]."  18 U.S.C. § 924(c).  See *United States v. Dye*, 538 F. App'x 654, 664 (6th Cir. 2013) (unpublished) (affirming cumulative sentences for section 924(c) and arson).

J.  Jury Venire

Defendant Edmond argues that the jury venire in this case failed to provide adequately for African Americans in violation of the Jury Selection and Service Act of 1968.  This Act requires that challenges to the venire in criminal cases be made "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of due diligence, the grounds therefor, whichever is earlier."  28 U.S.C. § 1867(a).  In this case, Edmond raised his objection after voir dire was complete, but before the jury was sworn in.

Constitutional challenges to the jury are governed by Fed. R. Crim. P. 12, and Rule 12(b)(3)(B) has been interpreted to require that challenges to the jury pool must be raised before the start of trial or they are considered waived.  *United States v. Ovalle*, 136 F.3d 1092, 1107 (6th Cir. 1998).  The court may grant relief from a waiver upon a showing of cause and actual prejudice.  Fed. R. Crim. P. 12(e); *Ovalle*, 136 F.3d 1107.  In this case, Edmond argues that the violation speaks for itself - "[t]here were 81 potential jurors and only two were residents of Detroit."  (Edmond Reply Brief, p. 24 [doc. 192]).

-13-

However, to show cause for excusing a waiver under Rule 12, "a defendant must demonstrate that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule.'"  *United States v. Boulding*, 412 Fed. Appx. 798, 802 (6th Cir. 2011) (citation omitted).  In this case, defendant has not done anything to demonstrate cause or actual prejudice, and therefore his objection is considered untimely and waived.  It is therefore unnecessary to reach the merits of defendant's challenge.

K.  Grand Jury Abuse

Bernard Edmond contends that the indictment should be dismissed because of prosecutorial misconduct before the grand jury.  He claims that Stratford Newton testified falsely before the grand jury and case agent Southard adopted those false statements in order to obtain the Third Superseding Indictment.

Federal Rule of Criminal Procedure 12(b)(3)(A) requires that motions alleging a defect in the institution of the prosecution, such as this challenge regarding misconduct before the grand jury, be raised before trial.  *United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007).  Edmond's motion, filed after the trial concluded, raises this issue for the first time.

Even if Edmond's motion were timely, an indictment can be dismissed for prosecutorial misconduct before the grand jury only if there is actual prejudice to the defendant.  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  The jury's trial verdict is an absolute cure to any prejudice that could have been caused, even if the indictment was obtained through knowingly false testimony to the grand jury.  *United States v. Mechanik*, 475 U.S. 66, 72-3 (1986) ("[T]he petit jury's verdict rendered

-14-

harmless any conceivable error in the charging decision that might have flowed from the violation.").

L.  Cumulative Due Process Claim

Frank Harper argues that the many errors in the trial, taken collectively, denied him of a fair trial in violation of his due process rights.  "In order to obtain a new trial based upon cumulative error, [a defendant] must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."  *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citation omitted). The cumulative effect of the errors must have "deprived the defendant of a trial consistent with constitutional guarantees of due process."  *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000).  "Where . . . no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal."  *United States v. Sypher*, 684 F.3d 622, 628-29 (6th Cir. 2012).

Defendant has failed to state a cumulative due process claim.

For the foregoing reasons, defendants' motions for directed verdict, judgment of acquittal notwithstanding the verdict, or for new trial are DENIED.

IT IS SO ORDERED.

Dated:  October 6, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 6, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---