UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                            Case No. 11-20188-2

PHILLIP HARPER (D-2),       HON. GEORGE CARAM STEEH

        Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE [ECF No. 323, 362]

This matter comes before the Court on defendant Phillip Harper's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 (ECF No. 323). Counsel was appointed to represent Harper and filed a supplemental brief in support of the motion (ECF No. 362). Harper makes three claims in his motion: (1) carjacking is not a crime of violence for purposes of § 924(c)(3)(A); (2) if carjacking is a crime of violence under § 924(c)(3)(A), he should be resentenced for "brandishing" a weapon during the commission of a crime of violence as opposed to "use or carry" on each of his 924(c) convictions; and (3) his attorney provided ineffective assistance for various reasons. For the reasons set forth below, defendant's motion is DENIED.

## I. Procedural Background

This case arises out of a spree of luxury auto thefts. Over 20 automobiles were stolen by Harper and his co-conspirators. The evidence at trial indicated there were five occasions where Harper intimidated valets into handing over automobiles that were in their care. On four of those occasions, the valets knew Harper had a firearm in his possession. On September 17, 2013, the jury returned a verdict convicting Harper on carjacking conspiracy, five carjackings and four corresponding § 924(c) counts. On October 28, 2014, the Court sentenced defendant to a total of 1,111 months or just over 92 years. The sentence was comprised of a mandatory minimum of 80 years on the three firearm counts and a combined consecutive 151 months on the other counts.

Defendant appealed his convictions, and his appeal was consolidated with his codefendants' appeals. *See United States v. Edmond*, 815 F.3d 1032 (6th Cir. 2016). In a published decision dated March 3, 2016, the Sixth Circuit affirmed all of the defendants' convictions and sentences. *Id*. at 1038. The Court denied their petitions for rehearing *en banc* on May 4, 2016. *Id*. at 1032.

After the Supreme Court's decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), the Sixth Circuit affirmed Harper's convictions but vacated

his sentence and remanded "for the limited purpose of resentencing in light of *Dean*." (ECF No. 270: Order, 2, No. 14-2428).  This Court resentenced Harper to one day on the conspiracy and each of the carjackings, and 80 years consecutive for the four § 924(c) convictions (ECF No. 310).

## II.  Argument

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'"  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

**A.    Carjacking is a crime of violence under 18 U.S.C. § 924(c)(3)(A)**

Harper claims that carjacking is not a crime of violence under the elements clause of 18 U.S.C. § 924(c) following the Supreme Court's holding that the residual clause of § 924(c)(3)(B) is unconstitutionally

vague. *United States v. Davis*, 139 S. Ct. 2319 (2019). However, the Sixth Circuit recently rejected an identical claim by Harper's codefendant and brother, Frank Harper, in *Harper v. United States*, 792 F. App'x 385, 389 (6th Cir. 2019). The Court held:

> Although the Supreme Court has determined that § 924(c)'s residual clause is unconstitutionally vague, *United States v. Davis*, ––– U.S. –––, 139 S. Ct. 2319, 2336 (2019), this court has held that carjacking constitutes a crime of violence under § 924(c)'s elements clause, *United States v. Jackson*, 918 F.3d 467 (6th Cir. 2019). Harper argues that carjacking is not a crime of violence because it can be committed by "intimidation." He asserts that carjacking by "intimidation" can be accomplished "by making a statement that only could theoretically, not actually, put someone in fear of bodily harm, and therefore does not satisfy" § 924(c)'s elements clause. But in *Jackson*, we rejected a similar argument and concluded that the commission of carjacking by "'intimidation' necessarily involves the threatened use of violent physical force." *Jackson*, 918 F.3d at 486. This published holding forecloses Harper's claim that his carjacking convictions were not crimes of violence under § 924(c).

Phillip Harper's argument that after the Supreme Court's decision in *Davis* carjacking is no longer a crime of violence is foreclosed by the Sixth Circuit's holdings in *Jackson* and *Harper*.

B.  **Claimed sentencing error**

Harper makes the alternative argument that, if the Court finds carjacking to be a crime of violence under § 924(c), he should be

- 4 -

resentenced for having brandished the firearm while committing each carjacking, as opposed to merely having it on his person during the commission of the crimes. Harper cites to the Sixth Circuit's March 3, 2016 opinion, in which the Court describes Harper's actions associated with each carjacking as brandishing the weapon. In doing so, the Court was addressing the sufficiency of the evidence as to the intent element of carjacking, which it noted is "satisfied at a minimum if 'a defendant brandishes a firearm and . . . physically touches the carjacking victim.'" *United States v. Edmond*, 815 F.3d 1032, 1039 (6th Cir. 2016) (citing *United States v. Washington*, 714 F.3d 962, 968 (6th Cir.2013)); see also jury instructions (ECF No. 139, PageID.767).

According to Harper, because his carjacking convictions required brandishing or intimidating the victim with the presence or implied presence of a firearm, and not mere possession of a firearm, he should have been sentenced for brandishing on his 924(c) counts. However, the Court sentenced Harper for "use or carry," which is how the jury was instructed and consistent with the verdict form (ECF No. 137, PageID.728-730; 139, PageID.769). The term "use" was further defined in the jury instructions to require "active employment" of the firearm during and in relation to the associated carjacking crime. "Active employment" was defined in the

instructions to include "activities such as brandishing and displaying a firearm." Finally, "use" was defined to "require[] more than mere possession or storage of the firearm" (ECF No. 139, PageID. 769).

Harper did not raise this alleged sentencing error on direct appeal, nor does he argue that his counsel was ineffective for failing to raise the claim. "'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (quotation omitted).

Harper argues that the Court erred when it sentenced him to five years in prison for "possession" of a firearm during the commission of a violent crime instead of sentencing him to seven years for "brandishing" a weapon. In order to correct its error, Harper maintains that the Court must re-sentence him pursuant to the correct provisions of section 924(c) and then apply the First Step Act since the re-sentencing will occur after December 21, 2018.

First, the Court finds that it did not err in sentencing Harper on the firearm charges under the law as it was at the time of sentencing. The jury found Harper guilty of "use or carrying" of a firearm on each of his 924(c)

convictions (he was found not guilty on Count 13 which was the 924(c) charge associated with Count 12 attempted carjacking). While the jury was instructed that "use" can include "brandishing", the jury was not asked to find brandishing, and so did not find brandishing beyond a reasonable doubt. See Alleyne v. United States, 570 U.S. 99, 117 (2013) (the finding of brandishing increased the penalty and was an element that the jury had to find beyond a reasonable doubt).

The Court notes a few things related to Harper's sentencing argument. First, Harper did not suffer prejudice due to his sentencing where he received less time than he would have if the Court sentenced him for brandishing (five years versus seven years). Second, the "First Step Act's changes to § 924(c) are not retroactive to cases on collateral review." Jordan v. United States, No. 3:18-CV-001268, 2020 WL 2112263, at *2 (M.D. Tenn. May 4, 2020); see also Baugh v. United States, No. 3:16-cv-02628, 2020 WL 409728, at *5 n.5 (M.D. Tenn. Jan. 24, 2020) (Section 403(b) of the First Step Act includes an application note for "pending cases," explaining that the § 924(c) amendments "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."). Finally, Harper cites no cases in support of his argument for

resentencing under the First Step Act due to alleged error in the original sentence.

**C.    Ineffective assistance of counsel**

Harper contends that his counsel was ineffective during plea negotiations as well as during trial. To present an ineffective assistance of counsel claim under 28 U.S.C. § 2255, defendant must show that (1) his attorney's performance was seriously deficient and (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance was deficient, defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 688. In applying this standard, "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 695.

Counsel's deficiency results in prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To satisfy the prejudice requirement in the context plea negotiations, a defendant may demonstrate

prejudice by showing "a reasonable probability that, with proper advice, the outcome of those [plea] negotiations would have been different." *Rodriquez-Penton v. United States*, 905 F.3d 481, 490 (6th Cir. 2018).

### 1. Failure to timely submit plea offer

Harper argues that his initial trial attorney failed to submit a plea offer to him prior to the government-imposed deadline. As a result, he lost the opportunity to take advantage of an offer that would have shaved decades from his sentence. However, this issue was previously brought before the Court and the evidence established that Harper ultimately rejected the offer he refers to in his motion. The government filed a motion in limine to admit Harper's Rule 11 Plea Agreement, wherein it averred that "Defendant Phillip Harper and his then-counsel signed a Rule 11 plea agreement dated March 15, 2013 and provided the signed original to the United States Attorneys' office. Defendant later informed the Government that he had decided to plead not guilty." (ECF No. 101, PageID. 337). In response to that motion, Harper agreed that: "The proposed Rule 11 was never entered on the record, and Defendant Phillip Harper never entered a guilty plea before this Court . . . the proposed Rule 11 Agreement w[as] a part of continued negotiations between the Government and Defendant's prior counsel and thus inadmissible[.]" (ECF No. 103, PageID.390). The Court

also found that Harper had rejected the plea: "On March 15, 2013, defendant and his then-counsel signed a Rule 11 plea agreement but it was never entered by this court because defendant subsequently informed the government he no longer wished to plead guilty." (ECF No. 113, PageID. 494); *see also* (ECF No. 231, PageID.3984; 8/08/2013 Hearing Tr. where the Court determined that any "earlier proposed plea agreement was rejected[.]").

While Harper demonstrated interest in entering a plea agreement, and there were discussions of potential offers, the government and Harper never entered a formal or concrete agreement. Therefore, Harper's counsel could not have done anything else and his assistance in this regard was not ineffective.

### 2. Failure to raise a *Brady* claim

To establish a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "a defendant 'has the burden of showing that [1] the Government suppressed evidence, [2] that such evidence was favorable to the defense, and [3] that the suppressed evidence was material.'" *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (quoting *United States v. Graham*, 484 F.3d 413, 416 (6th Cir. 2007)). There is no *Brady* violation "if the defendant knew or should have known the essential facts permitting him to

take advantage of the information . . . or if the information was available to him from another source." *Id*. (quoting *Graham*, 484 F.3d at 416). The "*Brady* doctrine is not violated if *Brady* material is disclosed in time for its effective use at trial." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). Reversal is only proper when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.'" *Smith*, 749 F.3d at 489 (quoting *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994)).

A key government witness was a former co-defendant who cooperated and testified that he was responsible for the theft and firearm involved in Counts 14 and 15. Harper claims that his trial counsel failed to raise a *Brady* claim when the government introduced "new unseen video evidence in trial." The evidence at issue was a surveillance video showing the theft of the 460 Lexus involved in Counts 14 and 15 against Harper. Harper contends that along with the testimony of the cooperating co-defendant who admitted to stealing the 460 Lexus, at trial the victim identified someone other than Phillip Harper as the perpetrator. Harper argues that, with proper review and preparation, the surveillance video

could have been used to impeach witnesses who falsely accused Mr. Harper of stealing the 460 Lexis.  However, the government failed in its duty to provide the video to Harper prior to trial.  Harper alleges that his trial counsel was ineffective in failing to file a *Brady* motion based on the government's failure to turn over the exculpatory video evidence that could have been used to impeach government witnesses.

There is some discrepancy regarding whether the government provided the video prior to trial or whether the tape provided by the government was blank or otherwise not viewable by defendant. Regardless, Harper had the video evidence in time for use at trial as it was in fact shown at trial.  "[S]o long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated."  *Presser*, 844 F.2d at 1283.

"The prejudice analysis under *Brady* evaluates the materiality of the evidence."  *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013). "Evidence is material under *Brady* if a reasonable probability exists that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. (quoting *Jells v. Mitchell*, 538 F.3d 478, 501 (6th Cir. 2008)).  "The question is not whether the defendant would more likely than not have received a different verdict with the

evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "'[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.'" *Id*. (quoting *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000).

In this case, not only did Harper's counsel have the use of the video at trial, in addition to other impeachment evidence, but the evidence against Harper was overwhelming. *See Jones v. Bagley*, 696 F.3d 475, 488-89 (6th Cir. 2012) ("there was no *Brady* violation because the effect of all the evidence combined would not have created a reasonable probability of a different result when we consider the otherwise strong circumstantial evidence of his guilt.") To the extent the government suppressed exculpatory evidence as claimed by Harper, the Court finds there was no prejudice and therefore no valid claim of ineffective assistance of counsel.

### 3. Failure to challenge post-polygraph statements

During the litigation of this matter, Harper signed waivers for pre-polygraph examination questions and for polygraph examination questions.

Although Harper asked for counsel during the examination, and counsel was not provided, he nevertheless signed the waivers on the date of the polygraph exam, agreeing to answer questions without a lawyer present (ECF No. 323, PageID.4813). At the conclusion of the examination, the examiner informed Harper he had failed and immediately began asking him more questions, despite the lack of a waiver for post-polygraph questions. Harper argues that his trial counsel was ineffective for failing to file a pretrial motion to suppress his post-polygraph exam statement.

Prior to trial, this Court found that Harper's post-polygraph examination statements were admissible under his signed *Kastigar* agreement (ECF No. 113, PageID. 494). Harper does not identify what the statements at issue revealed, but the Court is aware that Harper engaged in extensive proffers with the government, and with his attorney present, on May 30, 2012 and August 8, 2012. All of these statements were evidence at trial, and together they were only a portion of the overwhelming evidence admitted by the government against Harper. Therefore, the Court concludes there was no prejudice to Harper.

The Court finds that none of Harper's ineffective assistance of counsel claims establish that his counsel's performance was objectively

deficient and prejudicial. The Court therefore finds that Harper has failed to make out a valid case of ineffective assistance of counsel.

### III. Conclusion

Harper has not demonstrated that carjacking is not a crime of violence for purposes of § 924(c)(3)(A), that he was improperly sentenced on his 924(c) convictions or that his counsel's performance was deficient or prejudiced his defense. Under the circumstances, an evidentiary hearing is not required. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Fontaine v. United States*, 411 U.S. 213, 215 (1973)) ("[E]videntiary hearings are not required when, as here, the record conclusively shows that the petitioner is entitled to no relief."). Now, therefore,

IT IS HEREBY ORDERED that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is DENIED.

The court declines to issue a certificate of appealability, because defendant has not "made a substantial showing of the denial of a constitutional right," for the reasons stated above. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22.

Dated: October 16, 2020

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE