UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

PHILLIP HARPER,

    Defendant.

_____/

Case No. 11-20188-02

HON. GEORGE CARAM STEEH

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR REDUCTION OF SENTENCE [ECF NO. 415]

Defendant Phillip Harper seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) in the form of a reduction of his sentence. As circumstances supporting "extraordinary and compelling reasons", Harper refers to his young age and lack of criminal history at the time he committed his crimes, circumstances beyond his control that prevented him from benefiting from a plea agreement, the disparity created when Congress substantially reduced the sentencing guidelines that apply to his firearm offenses, the fact that his sentence is an effective life sentence, and his prison record and efforts toward rehabilitation. When Harper filed his motion in November 2020, he had an appeal pending in the Sixth Circuit Court of Appeals challenging this Court's denial of his motion to vacate, set

aside or correct sentence under 28 U.S.C. § 2255. That appeal has since been denied. (ECF No. 444). For the reasons stated below, defendant's motion for compassionate release is DENIED.

## BACKGROUND FACTS

Over a six-month period in 2010, Phillip Harper and his conspiracy co-defendants ran a carjacking scheme whereby they stole luxury, high end automobiles at gunpoint. A jury found Harper guilty of committing five carjacking offenses, four counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), and one count of conspiracy (ECF No. 137). The guideline range for each of the five carjacking convictions was 121 to 151 months, and the court sentenced Harper to 151 months on each count to run concurrently with one another. The conspiracy count carried a guideline of 60 months, to be served concurrently with the carjacking counts. At the time of Harper's sentencing in 2014, the statute provided for a mandatory minimum sentence of 5 years for the first § 924(c) count and a mandatory consecutive sentence of at least 25 years for each "second or subsequent" firearm violation. 18 U.S.C. § 924(c)(1)(A)(i); 18 U.S.C. § 924(c)(1)(C)(i). Therefore, the Court was constrained to issue a consecutive mandatory minimum sentence of 960 months for the four firearm counts. After adding the 151 months for the carjackings and

conspiracy, Harper's total sentence was 1,111 months (ECF No. 209).

Harper filed an appeal and the Sixth Circuit affirmed his convictions and his sentence. *United States v. Edmond*, 815 F.3d 1032, 1039-40, 1048 (6th Cir. 2016). Harper then filed a petition for Writ of Certiorari in the United States Supreme Court. His petition was granted and the Supreme Court vacated the judgment, remanding the case to the Sixth Circuit for further consideration in light of *Dean v. United States*, -- U.S. --, 137 S.Ct. 1170 (2017). In *Dean*, the Supreme Court held that a sentencing court may consider the length of a sentence imposed by a mandatory minimum statute when calculating a sentence for the predicate counts. *Id*. On May 9, 2018, upon remand from the Sixth Circuit, this Court resentenced Harper, reducing his sentence to one day on the conspiracy and each of the five carjackings after considering the length of the mandatory minimum sentence for the firearm counts. Harper's new sentence was 960 months on the four § 924(c) convictions to be served consecutively to one day on the conspiracy and carjacking convictions. (ECF No. 310).

## LAW AND ANALYSIS

I. The Court's Authority to Grant Compassionate Release

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The statute provides for a

limited exception, known as "compassionate release," which is governed by § 3582(c)(1)(A). Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

Once the exhaustion requirement has been met, a court may grant a motion for judicial modification of an imposed term of imprisonment when three criteria have been met: (1) "extraordinary and compelling reasons warrant [a sentence] reduction," (2) the reduction is consistent with the "applicable policy statements issued by the Sentencing Commission," and (3) "all relevant sentencing factors listed in 18 U.S.C. § 3553(a)" have been considered. 18 U.S.C. § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *Jones*, 980 F.3d at 1111. The district court may deny a motion for compassionate release upon

- 4 -

finding that a defendant fails to meet any of the applicable criteria and does not need to address the other factors before denying the motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

II.  Exhaustion

Harper filed a request for compassionate release with the BOP on September 4, 2020 and again on October 9, 2020. Both requests were denied by the warden of his facility. Harper has therefore exhausted his administrative remedies before the BOP.

III.  Extraordinary and Compelling Reasons

Harper was 23 years old, had graduated college with an associate degree, and was employed as a pharmacist's assistant when he became involved with his brother and other individuals in the subject conspiracy. Harper had no criminal history prior to this case. Yet, because of the law in place at the time he was sentenced, Harper will be 91 years old on the date of his projected release from custody. In essence, Harper was given a life sentence, and a very lengthy one at that.

Harper makes several arguments in support of his request for compassionate release in the form of a reduction of his sentence. Harper argues that he was willing to take responsibility for his actions and enter a guilty plea but was not given the opportunity due to factors outside of his

control. Just prior to the plea cutoff hearing, the government discussed potential offers with Harper to enter a plea to serve 18 years. However, no deal was ever reduced to writing because it was conditioned on his co-defendant brother, Frank Harper, also accepting a plea agreement. When Frank Harper turned down the government's plea offer (of 7 to 20 years) and decided to go to trial, the government withdrew from negotiations with Phillip Harper. (Plea Cutoff Transcript; ECF No. 231, PageID.3984-85). While Phillip Harper may have wanted to accept a plea, there was never a written plea deal offered by the government for him to accept. However unfair it might seem to a defendant in Harper's shoes, the government has the prerogative to offer a package plea bargain conditioned on both parties accepting the deal.

Furthermore, in this case, it is not perfectly clear that Harper would have actually taken a plea deal. The record shows that Harper did not accept an earlier plea deal that was reduced to writing and offered by the government. *See* ECF No. 113, PageID.494-95. Also, at sentencing, Harper explained that the reason he was unwilling to take the plea agreements offered by the government was because of the cooperation agreements that were made part of the deal: "for the sake of my family knowing the wrong that I've done, I tried to take a plea agreement, but

every time there was a cooperation agreement, and I couldn't take that." ECF No. 233, PageID.4054.

Many of the factors Harper asserts to support a finding of extraordinary and compelling circumstances were known at the time of sentencing, including his youth and lack of criminal history when he committed the crimes, as well as the fact that he was denied the ability to plead to a lesser sentence because of reasons that were outside of his control. Due to the length of the mandatory minimum sentence required for Harper's § 924(c) convictions, mitigating facts such as these would have had no impact in computing his sentence. However, the Court must follow Sixth Circuit precedent, which holds that facts that existed at sentencing, may not be considered in undertaking the extraordinary and compelling reason analysis. *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). Therefore, these factors cannot provide an extraordinary or compelling reason for the Court to grant compassionate release.

Approximately seven months after Harper was re-sentenced, Congress passed the First Step Act which, among other things, amended § 924(c) to eliminate the "stacking" of mandatory sentences for successive violations charged in the same indictment. Under the First Step Act, a 25-year sentence for a second § 924(c) conviction may only be imposed for

defendants who have been convicted previously of violating § 924(c). First Step Act of 2018, Pub. L. No.115-391, § 403, 132 Stat. 5194, 5221-22 (2018); 18 U.S.C. § 924(c)(1)(C). If Harper had been sentenced or even re-sentenced after the First Step Act was enacted, he would face a mandatory minimum sentence on the firearm convictions of 20 years (5 years for each of his four firearm convictions), rather than 80 years. 18 U.S.C. § 924(c)(1)(A). However, Congress did not make the First Step Act apply retroactively to defendants like Harper who had already been sentenced.

There have been several decisions issued by the Sixth Circuit related to motions for compassionate release involving nonretroactive changes in the law while Mr. Harper's motion has been pending. This Court delayed ruling on Harper's motion, believing that the Sixth Circuit would clarify the intra-circuit split over whether a nonretroactive change in sentencing law can support a finding of "extraordinary and compelling" reasons under § 3582(c)(1)(A). *See e.g. United States v. Owens*, 996 F.3d 755, 760 (6th Cir. 2021) (distinguishing *Tomes*[1] and *Wills*[2] and "[holding] that, in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may

---

[1] *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021).
[2] *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021).

include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied."); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021) (holding, based on *Tomes* and *Wills*, that a district court lacks the authority to reduce a defendant's sentence based on a non-retroactive change in the law, whether alone or in combination with other factors); *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) (extending the holding and reasoning of *Jarvis* relating to nonretroactive changes in statutes to cases involving nonretroactive judicial decisions); *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021) ("Under our precedents, a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A).").

At Harper's sentencing and re-sentencing, the Court was frustrated that it was bound by the statutory mandatory minimum sentence applicable to his § 924(c) counts. While courts may generally take the factors of a particular defendant and other surrounding circumstances into account in exercising its sentencing discretion, such factors had no impact here, where the statute required an effective life sentence be imposed on Mr. Harper. This includes many of the factors Harper argues in his motion for

compassionate release. However, as discussed above, § 3582(c)(1)(A) has been interpreted by the Sixth Circuit such that factors that were known at the time of sentencing, such as a defendant's age or the disparity between sentences for similar crimes, "cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *Hunter*, 12 F.4th at 562, 569-73. The Court remains frustrated today because it lacks clear guidance whether it can consider the nonretroactive change in the statute in its assessment of whether extraordinary and compelling circumstances exist such that Mr. Harper may qualify for a sentence reduction.

In addition to the disparity between Harper's sentence and one imposed for the same crimes after the First Step Act, Harper also highlights the sentencing disparity between his 80-year sentence and similar serious crimes. Harper points out that the average sentence for robbery is 109 months; for firearms 50 months; for murder 255 months; for drug trafficking 76 months; and for kidnaping 171 months. United States Sentencing Commission, 2019 Annual Report and Source Book of Federal Sentencing Statistics, Table 27.[3] These sentencing disparities are striking to say the least. However, the Court is not authorized to take these disparities into account as they also existed at the time Harper was sentenced.

---

[3] https://www.ussc.gov/research/sourcebook-2019

Finally, Harper cites his rehabilitative efforts as a basis for relief. Indeed, despite his extraordinarily long sentence, there are multiple indications that he has approached his term of imprisonment with a desire to be productive and transform his life. While disciplinary records and rehabilitative efforts are relevant to a discussion of the § 3553(a) factors, Congress has made it clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Given the constraints on what factors can be considered, the Court does not find that Harper's circumstances rise to the level of extraordinary and compelling. Upon finding that Harper fails to meet the applicable criteria to show the existence of extraordinary and compelling circumstances, the Court is not obligated to address the other factors before denying his motion. *Elias*, 984 F.3d at 519.

Although the Court denies Harper's request for relief, the question can be renewed if the Sixth Circuit or the United States Supreme Court indicates that district courts may consider the nonretroactive changes made to § 924(a) sentencing, or any of the other factors argued by Harper.

CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED that defendant's motion to reduce sentence (ECF No. 415) is DENIED.

Dated: March 31, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE
