UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No.: 2:11-cr-20188-GAD-RSW-2
        Hon. Gershwin A. Drain

PHILLIP HARPER,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [ECF No. 499]

In 2013, Defendant Phillip Harper was tried and convicted of four counts of carjacking, four counts of carrying a firearm during crimes of violence, one count of attempted carjacking, and one count of conspiracy. The Court sentenced Harper to prison for 1,111 months, and then resentenced him a few years later to 960 months and one day. The Court was constrained to impose such a lengthy sentence due to sentencing law at the time, which required a minimum sentence of 5 years for his first firearm conviction and 25 consecutive years for each successive firearm conviction.

1

Presently before the Court is Harper's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A).[1] Harper's argument is predicated on the Sentencing Commission's amended Sentencing Guidelines, promulgated in 2023, which provide that a court may consider a defendant's "unusually long sentence" in determining whether a defendant has an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). Unfortunately, the Sixth Circuit's intervening opinion *United States v. Bricker* forecloses Harper's argument and the relief he seeks. Therefore, Harper's Motion for Compassionate Release [ECF No. 499] is **DENIED**.

## I. BACKGROUND

Over a six-month period in 2010, Harper and his conspiracy co-defendants engaged in a carjacking scheme that involved stealing luxury vehicles at gunpoint. ECF No. 471, PageID.5988. Such encounters were violent. Harper and his co-defendants put loaded guns in the faces and backs of their victims, beat and kicked their victims, and even ran over one victim's arm with a vehicle. ECF No. 519, PageID.6310–11.

Harper was charged with conspiracy under 18 U.S.C. § 371, four counts of carjacking under 18 U.S.C. § 2119(1)–(2), one count of attempted carjacking under

---

[1] The Court finds that a hearing will not aid in the disposition of this motion. Accordingly, the Court will determine the outcome on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

18 U.S.C. § 2119(1)–(2), five counts of carrying a firearm during a crime of violence under 18 U.S.C. § 924(c), and one count of tampering with a witness by physical force or threat under 18 U.S.C. § 1512(a)(2)(C). ECF No. 109. The Court dismissed the count for tampering with a witness prior to trial. *See* ECF No. 131. Trial commenced in 2013, with the jury finding Harper guilty on all counts except for one count of carrying a firearm during a crime of violence. ECF No. 137, PageID.728–30.

In 2014, the Court sentenced Harper to 1,111 months in prison, which totals almost 93 years. ECF No. 220.[2] This sentence was composed of 60 months for the conspiracy conviction, served concurrently with the carjacking convictions; 151 months for each carjacking conviction, served concurrently with one another and the conspiracy conviction; 60 months for Harper's first firearm conviction, served consecutively; and 300 months for each successive firearm conviction, served consecutively (which totals 960 months for all the firearm convictions combined). ECF No. 220.

Severe mandatory minimum sentences for firearm convictions under 18 U.S.C. § 924(c) constrained the Court's sentencing decision in this case. Specifically, the statute imposed a mandatory minimum sentence of five years for

---

[2] Notably, this case was originally before the Honorable Judge George Caram Steeh. However, Judge Steeh recused in February 2025, and the case was transferred to the undersigned. *See* ECF No. 523.

3

the first § 924(c) conviction, and then a mandatory minimum sentence of 25 years for each successive § 924(c) conviction, regardless of whether those convictions arose out of the same indictment or the same underlying conduct. *See United States v. Henry*, 983 F.3d 214, 217 (6th Cir. 2020); *United States v. Head*, No. 2:19-cr-136, 2022 WL 219390, at *3 (S.D. Ohio Jan. 25, 2022). In addition, such sentences were required to be served consecutively and not concurrently. *Head*, 2022 WL 219390, at *3. Given Harper's four § 924(c) convictions, the Court had no choice but to impose a total of 960 months for those crimes alone.

Harper appealed his sentence and litigated his case to the Supreme Court. The Supreme Court granted certiorari and remanded the case to be reconsidered in light of *Dean v. United States*, 581 U.S. 62 (2017). *See* ECF No. 267. In *Dean*, the Supreme Court ruled that when a defendant is convicted and subjected to a mandatory sentence under § 924(c), courts may consider that sentence "when calculating an appropriate sentence for the predicate offense"—in this case, carjacking. *Dean*, 581 U.S. at 71. On remand, the Court resentenced Harper to 960 months and one day in prison, reducing his conspiracy conviction and carjacking convictions to concurrent one-day sentences in light of Harper's hefty § 924(c) sentences. *See* ECF No. 310.

Just seven months after Harper's resentencing, Congress passed the First Step Act. The First Step Act eliminated the "stacking" of § 924(c) sentences, making the

4

25-year mandatory minimum "applicable only if a first 924(c) conviction had 'become final' before the second offense was committed." *Head*, 2022 WL 219390, at *3; *see* 18 U.S.C. § 924(c)(1)(C). If Harper was sentenced after the First Step Act was promulgated, his mandatory minimum sentence for all four § 924(c) convictions would have been 20 years (five for each offense)—a far cry from the effective life sentence he is serving now. *See* 18 U.S.C. § 924(c)(1)(A)(i). Congress did not make the First Step Act retroactively applicable, so Harper was unable to have his sentence adjusted in light of the Act. ECF No. 519, PageID.6321.

Another change that Congress made with the First Step Act was to permit prisoners to file motions for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Previously, only the Bureau of Prisons was permitted to file motions for compassionate release on a prisoner's behalf. *See United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020). And courts were required to ensure that any reduction in sentence under the compassionate release statute was consistent the Sentencing Commission's policy statement. *See* 18 U.S.C. § 3582(c)(1); *see* U.S.S.G. § 1B1.13 (Sentencing Commission's policy statement on compassionate release). However, because the Sentencing Commission failed to update its policy statement after the promulgation of the First Step Act, the Sixth Circuit held that courts did not need to consider the Sentencing Commission's policy statement until a new one was promulgated. *Jones*, 980 F.3d at 1110–11.

5

In 2020, Harper filed his first Motion for Compassionate Release. ECF No. 415. Harper filed this motion during the window in which courts were not required to consider the Sentencing Commission's policy statement. Harper raised many arguments in his motion, such as his young age at the time of the crimes (only 23 years old), his lack of other criminal history, his inability to plead guilty due to factors outside of his control, and the disparity in his sentence compared to similar crimes. The Court declined to consider these factors due to binding Sixth Circuit precedent holding that facts that existed at sentencing may not be considered in undertaking the compassionate release analysis. ECF No. 471, PageID.5993. Harper also argued that he was entitled to compassionate release due to Congress's promulgation of the First Step Act, which made his § 924(c) sentences grossly disproportionate to the sentences that someone today would receive for the same crimes. The Court again declined to consider the First Step Act as a basis for compassionate release, noting that the caselaw was in flux regarding whether nonretroactive changes in the law could be the basis for compassionate release, and stating that it was "frustrated because it lack[ed] clear guidance" on the issue. *Id.* at PageID.5996. Finally, Harper argued that he had been largely rehabilitated, but the Court noted that rehabilitation alone cannot be considered as the basis for a sentence reduction. *Id.* at PageID.5997.

After the Court's decision on Harper's first Motion for Compassionate Release, the Sixth Circuit definitively decided that nonretroactive changes in the law—such as the First Step Act—cannot be the basis for a reduction in sentence because they are not "extraordinary and compelling". *United States v. McCall*, 56 F.4th 1048, 1065 (6th Cir. 2022). Notably, when the Sixth Circuit decided *McCall*, the Sentencing Commission still had not promulgated a new policy statement after the passage of the First Step Act.

In 2023, the Sentencing Commission updated its policy statement on compassionate release. The Sentencing Commission defined "extraordinary and compelling" reasons for a reduction in sentence to include nonretroactive changes in the law that create a gross disparity between the sentence being served and the sentence that would have been imposed at the time the motion for compassionate release is filed. *See* U.S.S.G. 1B1.13(b)(6). In addition, the Sentencing Commission clarified that an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in sentence. *Id.*(e).

After the Sentencing Commission promulgated this new policy statement, Harper filed his second Motion for Compassionate Release, which is presently before the Court. ECF No. 499. Harper argues that these Sentencing Commission changes effectively overrule the Sixth Circuit's contrary case law and that he is entitled to a reduction in sentence because of the gross disparity in his § 924(c)

7

sentences and the other facts that existed at the time of his sentencing. *Id.* at PageID.6111–12.

The Court stayed Harper's motion pending the Sixth Circuit's decision in *United States v. Bricker*, which would conclusively determine whether Harper's arguments were viable. The Court ordered the parties to file a notice on the docket within ten days of the Sixth Circuit's decision and stated that it would either rule on the motion or issue a supplemental briefing schedule if deemed necessary.

The Sixth Circuit rendered a decision in *Bricker* on April 22, 2025. *See United States v. Bricker*, 135 F.4th 427 (2025). The parties failed to notify the Court of this ruling as they had been ordered to do. Nevertheless, the Court has read and analyzed the *Bricker* decision and has determined that supplemental briefing is not necessary. It will rule on Harper's motion on the current briefs.

## II. LAW & ANALYSIS

### i. General Legal Principles Governing Compassionate Release

Federal law "generally prohibits a district court from modifying [a sentence] once it has been imposed." *McCall*, 56 F.4th at 1055 (cleaned up). However, 18 U.S.C. § 3582(c)(1)(A)—the "compassionate release" statute—provides a limited mechanism for a court to alter a sentence where the court's "failure to anticipate developments that take place after the first sentencing… produces unfairness to the defendant[.]" *Setser v. United States*, 566 U.S. 231, 243 (2012) (cleaned up). That

8

section states that a court may reduce a defendant's sentence upon determining (1) whether "extraordinary and compelling circumstances" merit a sentence reduction; (2) whether the applicable 18 U.S.C. § 3553(a) sentencing factors warrant a reduction, and (3) whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1). In addition, before a defendant brings a § 3582(c)(1)(A) motion, he must exhaust his administrative remedies with the Bureau of Prisons. *See id.* A district court must deny compassionate release motions when any of these requirements are lacking and does not need to address the other requirements. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### ii.     Compassionate Release Pre- and Post-*Bricker*

Before the Sentencing Commission promulgated a new policy statement on sentence reductions after the passage of the First Step Act, the Sixth Circuit helped describe what constitutes an "extraordinary and compelling" reason for a sentence reduction under the statute. In *United States v. Hunter*, the Sixth Circuit held that courts cannot "tak[e] facts that existed at sentencing and repackag[e] them as 'extraordinary and compelling.'" 12 F.4th 555, 569 (6th Cir. 2021). In other words, facts that existed at the time of sentencing cannot be extraordinary and compelling reasons for sentence reduction. *Id.* at 571. In *United States v. McCall*, the Sixth Circuit held that "[n]onretroactive legal developments, considered alone or together

9

with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction." 56 F.4th at 1065–66.

After these decisions, the Sentencing Commission promulgated a new policy statement on the compassionate release statute which conflicts with the Sixth Circuit's rulings. *See* U.S.S.G. § 1B1.13. In that statement, the Commission stated that "extraordinary and compelling" circumstances may include the fact that the prisoner is serving an "unusually long sentence." *Id.*(b)(6). Specifically, the policy statement reads:

> **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* In addition, the policy statement clarifies that:

> **(e) Foreseeability of Extraordinary and Compelling Reasons.**--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

*Id.*(e).

The Sentencing Commission's policy statement created a question for the courts: whether the Commission has the "power to overrule a Circuit Court's interpretation of a statute or to promulgate a policy statement that contradicts other federal statutes." *Bricker*, 135 F.4th at 430. In *Bricker,* the Sixth Circuit definitively answered "no." *Id.*

The *Bricker* court was tasked with determining whether the Sentencing Commission could overrule court precedent or federal statutes when promulgating its policy statement for compassionate release. The court acknowledged that Congress charged the Sentencing Commission with the task of producing policy statements that describe what can be considered extraordinary and compelling, but held that a court's interpretation of the plain text of a statute trumps a contradictory policy statement by the Commission. *Id.* at 438. In addition, the Sixth Circuit noted that "even with an express delegation of authority, the Commission does not have limitless power to define 'extraordinary and compelling' to mean what it plainly does not allow[.]" *Id.* at 439. Because *McCall* held that nonretroactive changes in the law are ordinary and routine, they can never constitute an extraordinary and compelling circumstance for compassionate release. Thus, the *Bricker* court held that the Commission was without power to attempt to describe nonretroactive legal changes—which are ordinary and routine circumstances—as "extraordinary and

11

compelling," given that this position had already been foreclosed by court interpretation. *Id.*

Furthermore, the *Bricker* court noted that the Commission's policy statement contradicts 1 U.S.C. § 109, which states that statutes are nonretroactive unless Congress specifically designates them as retroactive. The Sixth Circuit emphasized that "[t]he Commission must interpret statutes in a way that complies or coexists with other statutes." *Id.* at 445 (citation omitted). It noted that the Commission's policy statement would "effectively negate § 109 by empowering a court to reduce a prisoner's sentence by giving retroactive effect to expressly nonretroactive changes." *Id.* at 444. In sum, the *Bricker* court held that "§ 1B1.13(b)(6) aggrandizes the Commission's powers at the expense of the judiciary and Congress, an acute concern of separation-of-powers jurisprudence." *Id.* at 449.

### iii. Harper's Long Sentence and Facts That Existed At The Time of Sentencing Are Not "Extraordinary and Compelling"

Harper argues that the passage of the First Step Act is an extraordinary and compelling reason for his release because his sentence is 60 years longer than the sentence a person would receive today for committing the same crimes. ECF No. 499, PageID.6112. The Court sympathizes with Harper's position.[3] However, the

---

[3] In a similar case decided pre-*McCall*, the Honorable Judge David M. Lawson found that a defendant's 107-year sentence for his five § 924(c) convictions was an extraordinary and compelling reason for compassionate release, noting that the sentence was "the most lopsided and disproportionately severe sentence the Court

Sixth Circuit definitively held that nonretroactive changes in the law, such as the First Step Act, can never be "extraordinary and compelling"—not even in extreme cases such as Harper's. "Congress expressly chose not to apply [the First Step Act's] changes to defendants sentenced before the passage of the Act." *McCall*, 56 F.4th at 1057. To reduce Harper's sentence in contravention of the First Step Act's nonretroactivity and the Sixth Circuit's interpretation of "extraordinary and compelling" would be to elevate the Sentencing Commission's policy statement over the decisions of our elected lawmakers and the courts, which violates the separation of powers and is unconstitutional. *Bricker*, 135 F.4th at 449–50; *see also United States v. Branham*, 97 F.3d 835, 849 (6th Cir. 1996) ("[O]nly Congress has the authority to revise its statutes, a responsibility which neither the courts nor the Sentencing Commission can exercise."); *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536–37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.").

---

has had to mete out in more than 20 years on the bench." *United States v. McDonel*, 513 F. Supp. 3d 752, 758 (E.D. Mich. 2021). Harper's sentence of 80 years—which is likely a life sentence—is similarly severe. However, unlike Judge Lawson was at the time, the Court is now foreclosed from considering the argument that Harper makes here due to intervening Sixth Circuit case law.

13

Harper also argues that his young age at the time of the crimes, his educational level, his lack of criminal history, and his inability to enter a guilty plea due to factors outside his control[4] warrant a sentence reduction. ECF No. 499, PageID.6111. Harper contends that the Court may consider these facts because the Sentencing Commission's policy statement permits courts to consider facts that were known or foreseeable at the time of sentencing. *See* U.S.S.G. § 1B1.13(e). However, the Sixth Circuit has already held—after interpreting § 3582(c)(1)(A) based on its text, structure, and narrow scope—that "identifying 'extraordinary and compelling reasons' is a task that focuses on *post-sentencing* factual developments." *Hunter*, 12 F.4th at 569 (emphasis added). The Sentencing Commission's revised guideline, which permits courts to consider facts that it could have known or anticipated at the time of sentencing, "is at odds with Sixth Circuit precedent in *Hunter*[.]" *United States v. Demming*, No. 1:20-cr-395-1, 2025 WL 1115610, at *4 (N.D. Ohio Apr. 15, 2025); *see also United States v. Lee*, No. 18-20198, 2024 WL 1508826, at *6 (E.D. Mich. Apr. 5, 2024) ("[The Sentencing Commission's] policy position is in

---

[4] Early in the case, the Government had offered Harper certain plea deals that Harper declined for being "unreasonable." ECF No. 499, PageID.6111. Just prior to the plea cut-off, the Government offered Harper another plea deal of 18 years, which was contingent on Harper's co-defendant accepting a plea. When Harper's co-defendant refused to plead guilty, the Government withdrew from negotiations with Harper, and he was required to stand trial. *Id.*

14

some tension with the Sixth Circuit's holdings to the contrary, which broadly reject the consideration of any facts that existed at the time of sentencing[.]").

Whatever the constitutionality of § 1B1.13(e), the Sixth Circuit has also suggested in an unpublished opinion that § 1B1.13(e) is not applicable in circumstances where the sentencing court *actually knew* the fact that the defendant argues is extraordinary and compelling. *See United States v. Parks*, No. 24-5566, 2025 WL 1069308, at *2 (6th Cir. Apr. 9, 2025) ("A fact that 'reasonably could have been known or anticipated' isn't the same as a preexisting fact that the district court did know." (quoting U.S.S.G. § 1B1.13(e)). Here, the Court actually knew Harper's age, education, lack of criminal history, and his loss of a plea deal at the time of sentencing.

Finally, Harper argues that the fact that he has been rehabilitated over his thirteen years of incarceration warrants compassionate release. ECF No. 499, PageID.6113. Harper has gained many certifications, learned skills, helped other inmates and prison staff, and maintained steady employment. *Id.* at PageID.6113–14. Harper included hundreds of pages of exhibits to this motion demonstrating the effort he has made in prison personally, spiritually, and professionally. The Court appreciates Harper's dedication to improving himself in prison, and highly commends him for his accomplishments. However, rehabilitation is not an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A).

15

*See* U.S.S.G. § 1B1.13(d); *see also Hunter*, 12 F.4th at 572 ("Congress was emphatically clear that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." (cleaned up)).

In sum, unless Congress makes the First Step Act retroactive or the binding case law in this Circuit changes, this Court is without power to reduce Harper's sentence based on the reasons he provided in his Motion for Compassionate Release. Harper lacks an extraordinary and compelling circumstance warranting a sentence reduction under the law as it stands now, and this forecloses relief under § 3582(c)(1)(A). *See Elias*, 984 F.3d at 519.

### III. CONCLUSION

For the foregoing reasons, Harper's Motion for Compassionate Release [ECF No. 499] is **DENIED**.

**SO ORDERED.**

Dated:  June 17, 2025               /s/Gershwin A. Drain
                                    GERSHWIN A. DRAIN
                                    United States District Judge